UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EAGLE EYE PRODUCE, INC.,<br><br>                Plaintiff,<br>v.<br><br>CM INTERNATIONAL, INC., and MIGUEL S. ORTEGA,<br><br>                Defendant. | Case No. 4:11-cv-00346-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff's Amended Motion for Default Judgment and for Prejudgment Interest (Dkt. 17). On July 28, 2011, Plaintiff Eagle Eye Produce, Inc. filed an Amended Motion for Default Judgment and for Prejudgment Interest (Dkt. 17). The case was originally assigned to Magistrate Judge Bush, but because Defendants did not appear, and no consents were filed, the case was reassigned to the undersigned District Judge on November 9, 2012. Plaintiff seeks damages in the amount of 17,096.00 plus a $500.00 "handling fee," prejudgment interest in the amount of $3,439.81, attorney's fees in the amount of $4,323.00 and $902.80 in costs.

## BACKGROUND

This case arises under the Perishable Agricultural Commodities Act ("PACA"). Between November 9, 2010 and December 8, 2010, Plaintiff sold two truckloads of

onions to Defendant, CM International, Inc. ("CMI"). CMI accepted delivery but failed to pay Plaintiff the purchase price of $17,096.00. Complaint, Dkt. 1, ¶¶ 7-9. Plaintiff brings four causes of action: (1) violation of 7 U.S.C. § 499 for not maintaining the PACA trust against Defendant CMI; (2) unlawful disposition of PACA trust assets by corporate official against Defendant Miguel S. Ortega ("Ortega"); (3) breach of contract against CMI; and (4) unjust enrichment against CMI and Ortega. As explained below, the first cause of action is sufficient to award Plaintiff all of its damages.

On or about March 23, 2011, Plaintiff filed a PACA complaint against CMI with the Secretary of Agriculture of the United States of America. On July 1, 2011, an officer of the Secretary of Agriculture of the United States entered a Default Order against CMI awarding Eagle Eye $17,096.00, with interest thereon from January 1, 2011, until paid, plus a $500.00 "handling fee" for filing its complaint. Compl. ¶ 12; Driscoll Aff., Dkt. 17-2, Ex. B. Pursuant to section 7(b) of PACA, 7 U.S.C. § 499g(b), on July 28, 2011, Plaintiff filed the Complaint in the District Court for the District of Idaho, seeking enforcement of the PACA reparation award.

On March 2, 2012, the Court issued an Order (Dkt. 11) allowing Plaintiff to serve the Defendants by publication pursuant to Fed. R. Civ. P. 4(e)(1) and 4(h)(1), Idaho Rule of Civil Procedure 4(b)(3) and Idaho Code § 5-508. The Summonses ran in the Orange County Reporter once a week for four consecutive weeks: April 20, 2012; April 27, 2012; May 4, 2012; and May 11, 2012. Driscoll Aff., Dkt. 17-2, Ex. E. Defendants have not filed an appearance or answer within the time allotted by the rules.

**MEMORANDUM DECISION AND ORDER - 2**

On July 30, 2012, the Clerk of Court entered default pursuant to Fed. R. Civ. P. 55(a). On September 4, 2012, Plaintiff filed an Amended Motion for Default Judgment (Dkt. 17).

## JURISDICTION AND SERVICE OF PROCESS

Courts have an affirmative duty to examine their own jurisdiction – both subject matter and personal jurisdiction – when default judgment is sought. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Since this is an action under PACA, federal subject matter jurisdiction arises under 29 U.S.C. §§ 1331 and 1367. Personal jurisdiction arises from Defendants' commercial activities within Idaho.

Plaintiff made several attempts to personally serve Defendants. See Driscoll Aff., Dkt. 8-1. Then, with Court approval, Plaintiff made service by publication in accordance with Fed. R. Civ. P. 4(e)(1) and 4(h)(1), Idaho Rule of Civil Procedure 4(b)(3) and Idaho Code § 5-508. After the summonses ran in the Orange County Reporter once a week for four consecutive weeks, Defendants failed to appear or answer within the time allotted by the rules.

## DEFAULT JUDGMENT STANDARD

Where a party against whom judgment is sought has failed to plead or otherwise defend, the party seeking relief must first secure an entry of default, and then may apply to the court for default judgment. Fed. R. Civ. P. 55. Where a party is in default, "the factual allegations of the complaint, except those relating to the actual amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18

(9th Cir. 1987). For purposes of default judgment, the court need not enter findings of fact, except as to damages. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

Whether to enter default judgment is in the sole discretion of the court. *Lau Ah Yew v. Dulles*, 236 F.3d 415 (9th Cir. 1956). In *Eitel v. McCool*, the Ninth Circuit identified several factors for the court to consider in exercising its discretion to enter default judgment: (1) the potential prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong public policy underlying the Federal Rules favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 431 (C.D. Cal. 1999).

## ANALYSIS

### 1. Sufficiency of Claim and Individual Liability

Plaintiff brings claims against both CMI and Ortega, as a stockholder, director, officer, general manager and agent of CMI in a position of control over the PACA trust assets. Compl. ¶¶ 5, 20. After entry of default, well-pleaded factual allegations in the complaint are taken as true. *Televideo Sys., Inc.*, 826 F.2d at 917-18. Plaintiff alleges violation of PACA, 7 U.S.C. § 499b. PACA applies to sales of perishable agricultural commodities to any commission merchant, dealer, or broker. PACA gives the suppliers

of such commodities special rights designed to ensure payment. It requires that the perishable commodities or proceeds from the sale of those commodities be held in trust by the dealer for the benefit of the unpaid seller until full payment is made. 7 U.S.C. § 499e(c)(2).

To establish the existence of a PACA trust, Plaintiff must show that: (1) the commodities sold were perishable agricultural commodities; (2) the buyer was a commission merchant, dealer or broker; (3) the transaction occurred in interstate commerce; (4) the seller has not yet received full payment; and (5) the seller preserved its trust right by giving proper notice to the buyer. 7 U.S.C. § 499e.

Plaintiff's allegations of the existence of a PACA trust are sufficient. Plaintiff claims to have sold perishable produce through interstate commerce to Defendant CMI who was a holder of a PACA license (as a merchant, dealer or broker) and that Plaintiff has not received full payment for sales between November 9, 2010 and December 8, 2010. Compl. ¶¶ 3-12. Plaintiff also alleges it has performed "all conditions, covenants, and obligations required by its agreement with CMI and by the PACA." Compl. ¶ 10.

Plaintiff has also established personal liability for individual defendant Miguel S. Ortega. Ortega was identified in the PACA notice of order as someone "responsibly connected with the firm" and Plaintiff identifies him in its Complaint as "a stockholder, director, officer, general manager and agent of CMI, and an insider with actual and constructive knowledge of the . . . PACA trust and the provisions set forth in 7 U.S.C. § 499a, et seq., and responsible for the daily management and control of CMI." Compl.

¶ 5. The Ninth Circuit has recognized that individuals associated with corporate defendants may be liable under a PACA trust theory "if the seller's assets are insufficient to satisfy the liability." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997) ("[L]iability attaches first to the licensed seller . . . [and if] the seller's assets are insufficient to satisfy the liability, others may be found secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.") The Ninth Circuit then stated that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." Id.

Although it is not absolutely clear from the Complaint that CMI's assets are insufficient to satisfy the liability, the allegations sufficiently allege that Ortega improperly controlled trust assets and breached his fiduciary duty. These allegations in the Complaint are legally sufficient. Accordingly, Defendant Ortega is secondarily liable on the the PACA trust theory.

Moreover, Plaintiff's Complaint establishes an unjust enrichment claim against Ortega. Plaintiff alleges that a benefit was conferred upon CMI and Ortega by delivering produce to them, that CMI and Ortega appreciated the benefit of receiving the produce and enjoying control over the possession, use and disposition of the produce, and that allowing CMI and Ortega to retain the benefit of the product without payment for the value of the produce would be inequitable.  Compl. ¶¶ 28-30.

2.      *Eitel* **Factors**

The Court will first address the *Eitel* factors with respect to the PACA claim. Regarding possible prejudice to the Plaintiff, Defendants have failed to appear in this matter and a failure to enter default judgment would prejudice Plaintiff because it would be without recourse for recovery.

The next two factors, "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The Complaint properly alleges the necessary elements for its PACA claim and identifies the value Plaintiff conferred on Defendants in its sale of onions. The Court finds that the allegations in the Complaint establish the merits of Plaintiff's claims. Therefore these factors weigh in favor of entering default judgment.

The fourth factor which the Court must consider is the amount of money at stake in relation to the seriousness of Defendants' misconduct. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 490 (C.D. Cal. 2003). Plaintiff seeks damages in the amount of $17,096.00 plus a $500.00 handling fee. Given that Defendants have failed to pay Plaintiff the amount owed as evidenced by invoices submitted in connection with this motion, and its failure to comply with the judicial process or to participate in any way in the present lawsuit, imposition of this monetary award is justified.

The Court must consider, as the fifth factor, whether there is a possibility of a dispute as to any material facts in the case. As a consequence of the entry of default against Defendants, all of Plaintiff's well-pleaded facts in the Complaint are taken as true.

No disputes exist as to the material averments in the Complaint, which weighs in the favor of default judgment.

Next the Court must consider the possibility that a default will be the result of excusable neglect. Plaintiff has detailed its attempts to personally serve Defendants in its motions to serve and to serve by publication, which the Court ultimately granted. See Driscoll Aff., Dkt. 8-1. Plaintiff made several attempts to locate and serve Defendants, none of which have resulted in Defendants' appearance. The case has been pending for over a year and there has been no attempt by Defendants to appear or defend itself. The default is warranted.

The last factor is the public policy in favor of decision on the merits. However, as the court recognized in *Philip Morris*, the mere existence of Fed. R. Civ. P. 55(b) indicates that this factor alone is not dispositive. *Philip Morris*, 219 F.R.D. at 501. Because Defendants have not appeared, a decision on the merits is impractical, if not impossible.

Regarding the unjust enrichment claim against Ortega, the Court finds the *Eitel* factors weigh in favor of granting default judgment for the same reasons as apply to the PACA claim. Accordingly, the Court will enter Default Judgment pursuant to Fed. R. Civ. P. 55(b) against CMI and Ortega on the PACA claim, and against Ortega on the unjust enrichment claim.

3. **Damages**

Under PACA, merchants who violate its provisions "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e(a). Plaintiff is therefore entitled to the full value of the delivered produce, $17,096.00 plus the $500.00 PACA "handling fee." See 7 U.S.C. § 499e(a). As explained above, CMI shall be primarily liable, and Ortega shall be secondarily liable. However, Ortega shall be joint and severally liable based upon the unjust enrichment claim.

### 4.     Prejudgment Interest

Plaintiff also seeks prejudgment interest in the amount of $3,439.81. In the Default Order issued by Secretary of Agriculture, it is stated that an award of damages "where appropriate, includes interest" and the interest to be applied "shall be determined in accordance with 28 U.S.C. § 1961." Driscoll Aff., Dkt. 17-2, Ex. B. The order then states under the Reparation Award section: "Respondent shall pay Complainant as reparation $17,096.00, with interest thereon at the rate of 0.17 percent per annum from January 1, 2011, until paid, plus the amount of $500.00." Additionally, the invoices at issue stated: "Interest at 1.5% per month added to unpaid balance. Buyer agrees to pay interest and attorney's fees incurred to collect any balance due hereunder. Interest and attorney's fees necessary to collect any balance due hereunder shall be considered sums owing in connection with this transaction under the PACA trust."

Under the controlling case of *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220 (9th Cir. 2002), prejudgment interest may be included

in a PACA trust claim if supported by a contractual right; alternatively, the Court has discretion to award reasonable prejudgment interest if such an award promotes the interests of PACA claimants. Although the invoice creates an interest rate of 18% per annum, Plaintiff seeks, and the Secretary of Agriculture awarded, prejudgment interest at the rate of 17%. Plaintiff is entitled to prejudgment interest at the rate of 17% from January 1, 2011 until the date of the Judgment entered concurrently herewith.

5.      **Attorney's Fees**

Next, Plaintiff seeks attorney's fees in the amount of $4,323.00. Under PACA, 7 U.S.C. § 499g(b), "[i]f the petitioner finally prevails, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." The Court has reviewed the billing statements of attorney B.J. Driscoll in this matter (Driscoll Aff., Dkt. 17-2, Ex. A), and finds the amount of attorney's fees requested is reasonable. Thus, the fees will be awarded.

6.      **Costs**

Finally, Plaintiff seeks costs in the amount of $902.80. These include: U.S. District Court filing fee ($350.00); process service fees ($142.50); Federal Express fees for service of pleadings ($30.30); and publication of summons in the Orange County Reporter ($380.00).  Pursuant to 7 U.S.C. § 499g(b), "petitioner shall not be liable for costs in the district court . . . ."  Local Rule 54.1 defines the types of taxable costs available to the prevailing party under Fed. R. Civ. P. 54(d)(1). See Dist. Idaho Loc. Civ. R. 54.1(c)(1-7).  Plaintiff seeks costs for clerk's and service fees, which are allowable

under Local Rule 54.1(c)(1). Accordingly, Plaintiff will be awarded costs in the amount of $902.80.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff's Amended Motion for Default Judgment and for Prejudgment Interest (Dkt. 17) is **GRANTED**.

2. Judgment shall be awarded to Plaintiff and against Defendants CMI and Ortega, jointly and severally, in the amount of $17,596.00[1], plus prejudgment interest in the amount of 17% per anum from January 1, 2011 until the date of the Judgment entered concurrently herewith, plus $4,323.00 in attorney fees, plus $902.80 in costs.

3. A separate Judgment will be entered in accordance with Fed. R. Civ. P. 58.

DATED: January 11, 2013

B. Lynn Winmill
Chief Judge
United States District Court

---

[1] $17,096.00 plus the $500.00 handling fee equals $17,596.00.